IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| TRI COAST LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>THE SHERWIN-WILLIAMS COMPANY,<br><br>    Defendant. | Civil No. 16-3366 (RMB/JS)<br><br>**OPINION** |

APPEARANCES:

DENOIA, TAMBASCO & GERMANN
By: Thomas DeNoia, Esq.
501 Main Street
Toms River, New Jersey 08753
    *Attorneys for Plaintiff Tri Coast LLC*

BALLARD SPAHR LLP
By: John B. Kearney, Esq.
210 Lake Drive East, Suite 200
Cherry Hill, New Jersey 08002
    *Attorneys for Defendant The Sherwin-Williams Company*

**BUMB**, UNITED STATES DISTRICT JUDGE:

    Plaintiff Tri Coast LLC was awarded a contract by the United States Bureau of Prisons to paint the metal roofs on buildings at the federal prison in Fairton, New Jersey. Tri Coast purchased an exterior metal roof coating system-- i.e., primer and finisher-- from Defendant The Sherwin-Williams Company ("Sherwin-Williams") and used those products for the Fairton project. Shortly after the roofs were painted, the new paint began to peel. Tri Coast

contends that Sherwin-Williams sold it products that were not fit for use together on the Fairton project. The First Amended Complaint (the operative complaint) asserts claims for: (1) breach of the implied warranty of fitness for a particular purpose; (2) breach of contract; and (3) negligent misrepresentation.

Sherwin-Williams moves for partial summary judgment, seeking to eliminate all claims except the breach of contract claim, and it further seeks to limit the damages Tri Coast may potentially recover on the breach of contract claim.[1]

For the reasons stated herein, the Motion for Partial Summary Judgment will be granted in part and denied in part.

I. **FACTUAL BACKGROUND**

In mid-September, 2013, the Bureau of Prisons awarded Tri Coast the contract to paint the metal roofs on the buildings at Fairton Correctional Institution. (SMFND[2] ¶ 10) Tri Coast maintained an "account" with Sherwin-Williams, and chose "to go with [Sherwin-Williams'] products believing that [Sherwin-Williams] would have a product suitable for [the] project." (Robbins Dep. p. 56) Tri Coast "met with Sherwin-Williams," gave

---

[1] Sherwin-Williams also asserts a counterclaim for the unpaid balance of payment for goods sold to Tri Coast. The counterclaim is not implicated by the instant motion.

[2] "SMFND" refers to Sherwin-Williams' "Statement of Material Facts Not in Dispute" (Dkt No. 33-1) filed pursuant to L. Civ. R. 56.1 and Tri Coast's response thereto (Dkt No. 40-2).

2

it the Bureau of Prisons' "Statement of Work" which described the project, and Sherwin-Williams "gave [Tri Coast] the products they believed would best suit th[e] project." (Id. at p. 54) Those products were Dura-Plate 235 Multi-Purpose Epoxy base coat and Envirolastic 840 High Gloss DTM Urethane finish. (Amend. Compl. Ex. B; SMFND ¶¶ 31, 34)

The Product Information and Application Bulletins for the products, which Sherwin-Williams' representative, Jim Criss, provided to Tri Coast in an email on November 10, 2013 (Plaintiff's Ex. 5), contain the following warranty language:

> **WARRANTY**
> The Sherwin-Williams Company warrants our products to be free of manufacturing defects in accord with applicable Sherwin-Williams quality control procedures. Liability for products proven defective, if any, is limited to replacement of the defective product or the refund of the purchase price paid for the defective product as determined by Sherwin-Williams. NO OTHER WARRANTY OR GUARANTEE OF ANY KIND IS MADE BY SHERWIN-WILLIAMS, EXPRESSED OR IMPLIED, STATUTORY, BY OPERATION OF LAW OR OTHERWISE, INCLUDING MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.

(SMFND ¶ 31)

The Exterior Metal Roof Coating System Industrial Painting Schedule Guide ("Schedule Guide"), also provided to Tri Coast by Sherwin-Williams in the same email (Plaintiff's Ex. 5), states:

**Part 4  WARRANTY**

**4.1**  15 Year Warranty;

> The manufacturers coating system warranty is for material only, the warranty is for a 15 year period against peeling and corrosion from the properly prepared and coated bare steel and the properly prepared and coated existing coating system.

(SMFND ¶ 37)

In late summer 2014, Tri Coast began applying the coating system to the roofs at Fairton. (SMFND ¶ 51; Robbins Dep. p. 83)

3

"On or about September 18, 2014, . . . some sections of the newly applied paint" were observed to be "peeling off the D Unit roof." (SMFND ¶ 53) In October, more paint "was observed to be lifting or peeling from additional buildings which had already been coated." (Id. ¶ 54) "Ultimately, the paint peeled from all of the roofs except the lower building between the two D Units." (Id. ¶ 55)

"In the summer of 2015, Tri Coast painted the roofs again (other than the roof which did not peel) with different products purchased from Sherwin-Williams. To date, the paint that was applied in the summer of 2015 has not failed." (SMFND ¶¶ 61-62)

Tri Coast contends that the original coating system failed because, according to Sherwin-Williams' own literature (Burwell Decl. Ex. A), the Envirolastic 840 DTM should be applied directly to metal, not on top of a Dura Plate 235 MP Epoxy base coat, as Sherwin-Williams instructed Tri Coast to do on the Fairton project.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it will "affect the outcome of the suit under the governing law[.]" Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is "genuine" if it could lead

4

a "reasonable jury [to] return a verdict for the nonmoving party." Id.

In determining the existence of a genuine dispute of material fact, a court's role is not to weigh the evidence; all reasonable "inferences, doubts, and issues of credibility should be resolved against the moving party." Meyer v. Riegel Prods. Corps., 720 F.2d 303, 307 n.2 (3d Cir. 1983). However, a mere "scintilla of evidence," without more, will not give rise to a genuine dispute for trial. Anderson, 477 U.S. at 252. Moreover, a court need not adopt the version of facts asserted by the nonmoving party if those facts are "utterly discredited by the record [so] that no reasonable jury" could believe them. Scott v. Harris, 550 U.S. 372, 380 (2007). In the face of such evidence, summary judgment is still appropriate "where the record . . . could not lead a rational trier of fact to find for the nonmoving party[.]" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). Then, "when

a properly supported motion for summary judgment [has been] made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" Anderson, 477 U.S. at 250 (citing Fed. R. Civ. P. 56(e)). In the face of a properly supported motion for summary judgment, the nonmovant's burden is rigorous: she "must point to concrete evidence in the record"; mere allegations, conclusions, conjecture, and speculation will not defeat summary judgment. Orsatti v. New Jersey State Police, 71 F.3d 480, 484 (3d Cir. 1995); accord, Jackson v. Danberg, 594 F.3d 210, 227 (3d Cir. 2010) (citing Acumed LLC v. Advanced Surgical Servs., Inc., 561 F.3d 199, 228 (3d Cir. 2009) ("[S]peculation and conjecture may not defeat summary judgment.")).

**III. ANALYSIS**

**A. Count 1- Warranty of Fitness for a Particular Purpose**

Sherwin-Williams asserts that it conspicuously and specifically disclaimed any warranty of fitness for a particular purpose. Tri Coast disputes that the disclaimer was effective.

Under New Jersey's Uniform Commercial Code, "to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that 'There are no warranties which extend beyond the description on the face hereof.'" N.J.S.A. § 12A:2-316(2).

First, Tri Coast argues that the limiting language in the warranty set forth above is not "clear and conspicuous enough to be an effective disclaimer." (Opposition Brief, Dkt No. 40, p. 14) The Court disagrees.[3] The language appears in black, against a white page, in all capital letters[4], in distinct contrast to the sentence immediately preceding it, which is not in all capital letters. This is all the U.C.C. requires. See N.J.S.A. § 12A:1-201(b)(10) ("'Conspicuous,' with reference to a term, means so written, displayed, or presented that a reasonable person against which it is to operate ought to have noticed it. . . . Conspicuous terms include the following: (a) a heading in capitals equal to or greater in size than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same or lesser size; and (b) language in the body of a record or display in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from surrounding text of the same size by symbols or other marks that call attention to the language.") Moreover, Chief Judge Simandle has held identical language "clear, specific, and conspicuous within the meaning of the U.C.C." Pro-Spec Painting, Inc. v.

---

[3] "Whether a term is 'conspicuous' or not is a decision for the court." N.J.S.A. § 12A:1-201(b)(10).

[4] Tri Coast's characterization of the font as "small fine print" (Opposition Brief, Dkt 40, p. 20) is not supported by the record.

7

Sherwin-Williams Co., No. 16-2373 (JBS/AMD), 2017 WL 2106123 at *6 (D.N.J. May 15, 2017). Thus, Tri Coast's first argument fails.[5]

Tri Coast alternatively argues that even if the disclaimer was conspicuous, it nevertheless does not apply to the specific sale at issue because the written disclaimer was included in only the Product Information and Application Bulletins which are not specific to the sale, or even to Tri Coast. Tri Coast reasons that because the only sale-specific document-- the Schedule Guide-- contains a warranty which does not disclaim any implied warranties, the implied warranty of fitness was not effectively disclaimed.

Tri Coast's argument however, is inconsistent with the record. Tri Coast's own documents filed in opposition to the

---

[5] To the extent Tri Coast argues that the language was not conspicuous because it was effectively "buried" in several documents, each consisting of multiple pages, this argument also fails. In the context of this commercial transaction between relatively sophisticated parties, the Court rejects any conclusion that the disclaimer was buried within the documents, and therefore not conspicuous. The record discloses that the package of documents attached to Jim Criss' email of November 10, 2013 consists of: (1) the two-page Product Information and two page Application Bulletin for the base coat; (2) the two-page Product Information for the finish; (3) the seven-page Schedule Guide; and (4) the Material Safety Data Sheets for each product, each totaling four or five pages. The total number of pages attached to the email is 31. (Plaintiff's Ex. 5) The warranty language appears at the end of the second page of both the Product Information and Application Bulletin for the base coat, and at the end of the second page of the Product Information for the finish-- that is, within the 31 pages, the warranty disclaimer appears in three separate places, in three separate documents.

8

instant motion demonstrate that all of the relevant documents--
(1) the Product Information and Application Bulletin for the base
coat; (2) the Product Information for the finish; and (3) the
Schedule Guide-- were sent as attachments to Jim Criss' single
email of November 10, 2013, which was indisputably specific to the
Fairton project, as the very first sentence of the email reads,
"here is the tentative submittal to be approved by FCI Fairton."
(Plaintiff's Ex. 5 and Amend Compl. Ex. B)[6]  Thus, a reasonable
factfinder could only conclude that the implied warranty
disclaimer was specific to the sale of the products for use at
Fairton.

    Lastly, Tri Coast argues that the disclaimer of implied
warranties is ineffective because it is "unreasonably
inconsistent" with the 15-year warranty in the Schedule Guide.
Here again, Tri Coast's argument is based on a mischaracterization
of the record.  There is no inconsistency between the complete
disclaimer of the implied warranty of fitness for a particular
purpose and the provision of an express warranty that the
materials will be free from peeling and corrosion for a period of
15 years.  There is only one warranty: the 15-year warranty
provided in the Schedule Guide.  Therefore, there can be no

---

    [6]  See also Robbins Dep. p. 68-69 ("Q: So this [November 10th email from Jim Criss] is Sherwin-Williams saying these products are suitable for your [Fairton] project?  A: Correct.").

9

inconsistency between warranties[7], and Tri Coast's last argument fails.

Accordingly, the Court holds that Sherwin-Williams' disclaimer of the implied warranty of fitness for a particular purpose is effective, therefore summary judgment will be granted to Sherwin-Williams on Count 1.

**B. Count 3- Negligent Misrepresentation**

Sherwin-Williams asserts that the negligent misrepresentation claim is barred by the economic loss doctrine. Tri Coast asserts that the economic loss doctrine does not apply.

The economic loss doctrine maintains the "critical" "distinctions between tort and contract actions." Saltiel v. GSI Consultants, 170 N.J. 297, 310 (2002). "Essentially, the economic loss doctrine functions to eliminate recovery on 'a contract claim in tort claim clothing.'" G&F Graphic Servs. v. Graphic Innovators, Inc., 18 F. Supp. 3d 583, 588-89 (D.N.J. 2014)(quoting SRC Constr. Corp. v. Atl. City Hous. Auth., 935 F. Supp. 2d 796, 801 (D.N.J. 2013)).

If, through a tort claim, a plaintiff "simply seeks to enhance the benefit of the bargain [he] contracted for," Saltiel,

---

[7] See generally, N.J.S.A. § 12A:2-317 ("Warranties[,] whether express or implied[,] shall be construed as consistent with each other and as cumulative, but if such construction is unreasonable[,] the intention of the parties shall determine which warranty is dominant.").

10

170 N.J. at 315, the economic loss doctrine applies. On the other hand, if a plaintiff asserts that a defendant breached a "duty owed to the plaintiff that is independent of the duties that arose under the contract," id. at 317, the economic loss doctrine does not apply.

Tri Coast argues, somewhat confusingly, that the economic loss doctrine does not apply because "[t]here is no actual express contract between Tri Coast and Sherwin Williams. Tri-Coast has an open ended supply account. It requested a compatible system and the system was charged to Tri-Coast's account. As such, the remedies under this account are not governed by a contractual relationship between the parties, rather common law. This would include common law sales and tort law for negligent misrepresentation." (Opposition Brief, Dkt No. 40, p. 23).

This argument fails. First, nothing in New Jersey law limits the application of the economic loss doctrine to contracts which have been reduced to writing.[8] Indeed, creating such a limitation would be inconsistent with the rationale of the doctrine as discussed by the New Jersey Supreme Court in Saltiel. 170 N.J. at 309 ("distinctions between tort and contract actions are critical

---

[8] See N.J.S.A. § 12A:2-204(1) ("A contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract.").

because attaching a tort claim to a breach of contract action dramatically alters the rules governing damages.")(internal citation and quotation omitted).

Second, the Third Circuit, applying New Jersey law, has held that a commercial entity may not assert a claim for negligent misrepresentation arising out of a sales transaction governed by the U.C.C. See Henry Heide, Inc. v. WRH Products Co., Inc., 766 F.2d 105 (3d Cir. 1985).[9]

Heide's facts are analogous to this case. Heide purchased plastic trays for use in drying candy at high heat. 766 F.2d at 107. "Within two to four weeks following the initial use of the trays, Heide noticed that the trays were warping. Eventually, the trays proved unusable for Heide's process and were taken out of service." Id. at 108.

In affirming the District Court's grant of summary judgment in favor of the defendants on Heide's negligent misrepresentation claim, the Third Circuit first observed that "Heide's claimed injuries are economic losses caused by a defective product." Heide, 766 F.2d at 109. The Court went on to explain, "[b]ecause

---

[9] See also, Duquesne Light Co. v. Westinghouse Elec. Corp., 66 F.3d 604, 620 (3d Cir. 1995)("courts in jurisdictions which have adopted the economic loss doctrine routinely have declined to carve out an exception for claims of negligent misrepresentation"; "[a] party who engages in contractual negotiations with another has the ability to protect itself in the contractual language against the other party's innocent, though wrong representations.")(collecting cases).

this claim arises out of a sales transaction between commercial entities, it should be analyzed within the framework of the U.C.C. rather than by the rules of nonintentional tort law." Heide, 766 F.2d at 109 (discussing Spring Motors Distributors, Inc. v. Ford Motor Company, 98 N.J. 555 (1985)("The U.C.C. is generally regarded as the exclusive source for ascertaining when a seller is subject to liability for damages if the claim is based on intangible economic loss not attributable to physical injury to person or harm to a tangible thing other than the defective product itself.")); see also, Alloway v. Gen. Marine Indus., L.P., 149 N.J. 620, 641 (1997) ("In sum, judicial decisions and statutory enactments, including the U.C.C., protect consumers from overreaching. Against this background, a tort cause of action for economic loss duplicating the one provided by the U.C.C. is superfluous and counterproductive."); Pro-Spec Painting, 2017 WL 2106123 at *4 ("Because they are under the ambit of the U.C.C., N.J.S.A. § 12A:2-104(1) and (3), the Economic Loss Rule described in Spring Motors Distribution v. Ford Motor Co., 98 N.J. 555 (1985), dictates that Plaintiff's claim for negligence [] must be dismissed. Plaintiff does not dispute this argument in its Response.").[10]

---

[10] Tri Coast asserts that the New Jersey Supreme Court's holding in People Exp. Airlines, Inc. v. Consol. Rail Corp., 100 N.J. 246 (1985), is to the contrary. People Express is distinguishable because there was no contractual relationship

not used

13

Here, Tri Coast asserts no injury other than the intangible economic losses it suffered in connection with "having to prepare and paint the roofs a second time." (Amend. Compl. ¶ 25); accord. Alloway, 149 N.J. at 627 ("economic loss encompasses actions for the recovery of damages for costs of repair, replacement of defective goods, inadequate value, and consequential loss of profits. Economic loss further includes the diminution in value of the product because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold.") (internal citations and quotations omitted). Thus, the Court holds that the economic loss doctrine bars Tri Coast's negligent misrepresentation claim, and summary judgment will be granted in favor of Sherwin-Williams on Count 3.

**C. Damages**

Lastly, relying on the 15-year express warranty "for materials only," and the Product Information and Application Bulletin materials which state "[l]iability for products proven defective, if any, is limited to the replacement of the defective product or the refund of the purchase price paid for the defective

---

between the plaintiff and defendant in that case; plaintiff's only possible claim sounded in tort. See generally, SRC Const. Corp. of Monroe v. Atl. City Hous. Auth., 935 F. Supp. 2d 796, 799 (D.N.J. 2013) (discussing the holdings of Saltiel and People Express and observing, "the absence of a contract between a plaintiff and defendant in a negligence suit precludes the application of the economic loss doctrine.").

product as determined by Sherwin-Williams." (Plaintiff's Ex. 5)(emphasis added), Sherwin-Williams asserts that "Tri Coast's damages are limited to the purchase price paid for any defective products." (Reply Brief, Dkt No. 43, p. 5)  Tri Coast responds that it is entitled to recover "the labor and rental associated with the remove [sic] of the failed system and the replacement/application of the [a]lternate system." (Opposition Brief, Dkt No. 40, p. 25-26)

The issue is one of contract interpretation: what damages are encompassed by the limitation of remedies clause?[11]  The Court begins with the contract language itself which unambiguously provides two remedy options: "replacement of the defective product" "or" a "refund of the purchase price paid for the defective product as determined by Sherwin-Williams." (Plaintiff's Ex. 5)  Thus, Sherwin-Williams' argument that Tri Coast's potential recovery is limited to only the purchase price is contradicted by the parties' agreement.

Having eliminated Sherwin-Williams' proposed interpretation, the question becomes: is Tri Coast's proposed interpretation consistent with the parties' intent as reflected in their

---

[11] See generally, N.J.S.A. § 12A:2-719(1)(a)("the agreement may provide for remedies in addition to or in substitution for those provided in this Chapter and may limit or alter the measure of damages recoverable under this Chapter, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of non-conforming goods or parts.").

15

agreement?  The Court holds yes.  The "replacement value of the defective product" encompasses all reasonable and foreseeable costs associated with the repair of the defective paint system and replacement with a non-defective system.  Accord. N.J.S.A. § 12A:2-719(1)(a)("the agreement . . . may limit . . . the measure of damages recoverable under this Chapter, as by limiting the buyer's remedies . . . to repair and replacement of non-conforming goods or parts.")(emphasis added); see generally, N.J.S.A. § 12A:2-715(2)(a)("Consequential damages resulting from the seller's breach include any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise.").  Labor and equipment rental are foreseeable costs arising from repairing and replacing the allegedly defective paint system, and therefore are recoverable pursuant to the parties' agreement.[12]

---

[12] Interestingly, Sherwin-Williams avoids directly discussing the "or" language of the remedies clause, and conspicuously omits any argument that the clause vests with Sherwin-Williams the unilateral authority to select for Tri Coast which of the two remedies Tri Coast will receive.  Perhaps this reflects a deliberate strategic decision by Sherwin-Williams, as such an interpretation would be unconscionable.  See N.J.S.A. § 12A:2-302, comment 1 ("The basic test [for unconscionability] is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract. . . . The principle is one of the prevention of oppression and unfair surprise.") (emphasis added);  N.J.S.A. § 12A:2-719, comment 1 ("Under this

16

Sherwin-Williams' Motion for Summary Judgment as to this issue will be denied.

**IV. CONCLUSION**

For the foregoing reasons, Sherwin-Williams' Motion for Partial Summary Judgment will be granted as to Counts One and Three of the Amended Complaint and denied in all other respects. An appropriate Order shall issue on this date.

Dated: January 18, 2018

s/ Renée Marie Bumb

RENÉE MARIE BUMB
UNITED STATES DISTRICT JUDGE

---

section parties are left free to shape their remedies to their particular requirements and <u>reasonable</u> agreements limiting or modifying remedies are to be given effect.  However, <u>it is of the very essence of a sales contract that at least minimum adequate remedies be available</u>.  If the parties intend to conclude a contract for sale within this Article they must accept the legal consequence that there be <u>at least a fair quantum of remedy for breach</u> of the obligations or duties outlined in the contract. Thus any clause purporting to modify or limit the remedial provisions of this Article in an unconscionable manner is subject to deletion and in that event the remedies made available by this Article are applicable as if the stricken clause had never existed.") (emphasis added).